OWENS and another vs. NORTHRUP.

*Evidence — Agency.*

1. In an action to enforce a mechanic's lien, and for a personal judgment against N. for labor and materials furnished at the request of W., in building a house, where the question was whether W. acted as N.'s agent, all facts bearing on the question of such agency should be admitted in evidence; and W.'s testimony that he was such agent is not conclusive.
2. Thus, it was error to reject evidence of conversations between W. and N. before the house was built, in which it was agreed that N. should sell said lot to W., and receive back a mortgage for the purchase money after the house should be built; and also of conversations

in which W. represented himself to N. and third persons as the owner of the house.

3. Evidence that N. furnished W. a plan for said house, having been received as tending to confirm the fact of such agency, it was error to reject evidence for the defense, that the house was not built according to such plan.

4. Evidence of statements or admissions of W., inconsistent with his alleged agency, was also admissible to *impeach* his credibility, after he had testified for the plaintiff that he was such agent.

APPEAL from the Circuit Court for *Winnebago* County.

Action for the enforcement of a mechanic's lien. The plaintiffs, *Owens* and *Waldo*, filed their petition for a lien upon the lot of *Northrup*, the defendant, for labor performed by plaintiffs, as carpenters and joiners upon defendant's building. The case comes up solely upon exceptions to rulings of the court on questions of evidence. Upon the trial, plaintiffs produced as a witness, one Wilson, who testified that he resided at Winneconne in 1869, and was engaged in a foundry and machine shop, and that plaintiffs were then engaged in the carpenter business; that *Northrup* then lived at Ripon, and that witness employed plaintiffs in that year to build a house for *Northrup*, under whose instructions witness was acting; that *Northrup* had given him instructions to visit the different carpenter shops and make the best bargain possible, and that he would stand by it, *Northrup* sending witness a plan of the house he wished built; plaintiffs were to take all they could out of the foundry in payment, and the balance in money on the completion of the house; that *Northrup* had shown witness where to build the house, saying that the lot belonged to one Bovay. "I was operating the foundry; Mr. Northrup claimed the foundry; the house was completed some time the latter end of November or the first part of December; I moved into it; I have paid *Northrup* rents, and I lived in the house for some time and did not pay him any rent; I finally had to pay him rent; he gave me notice to leave the house, to that effect; if I would pay him rent I might live in the house; during the time the house

was building, *Northrup* sent me $125 to be used in the construction of it; this money, I believe, was sent sometime in November; I used this money for doors, sash, bricks, building a shed, privy and extras on the house; this money was sent while the plaintiffs were at work."

Upon re-cross-examination, witness testified as to the ownership of the foundry, that it was run in the name of Wilson & Brockway, *Northrup* having a claim upon it, witness operating it under a contract, by which he and Brockway were to purchase it, witness being allowed to take out $3 per day, and the balance being applied on the contract. Witness being asked whether he and Brockway were running the foundry for themselves, or whether they had the avails of it to apply on the purchase, the question was objected to, and the objection was sustained. Witness further testified, that he built the house as near as possible, to the plan sent by *Northrup*, which was lost before the house was finished, and he did not send for another; *Northrup* was at Ripon, and once in a while at Winneconne, and saw the house while it was building; that *Northrup* built the house for witness to have when he got ready to pay for it. Witness being asked whether the price of the lot was agreed upon, the question was objected to by plaintiff, and the objection sustained. Witness being further asked whether he had a conversation with *Northrup*, in which it was agreed that *Northrup* should sell the lot to him on which he was to build, and mortgage it back for the purchase money, the question was objected to by plaintiff's counsel, and the objection was sustained. The witness having testified that he told the plaintiffs he was building the house for *Northrup*, when he employed them, and that the house was built for witness' accommodation, if he should pay for it, his testimony upon this point was excluded. He was then asked whether he had not, in a certain conversation with *Northrup* and Olmstead, stated that he was tired of paying rent, and was in a hurry to get into his own house; whether he had not stated that he was going to eat his Christ-

mas dinner in his own house, referring to the one in question; whether there was any agreement as to what he was to pay *Northrup* for the house; what was the agreement as to the purchase of the lot; whether there was any agreement as to the amount he was to expend upon the house, and whether he had ever attempted to get the money from *Northrup* to pay plaintiffs—to all of which questions plaintiffs' counsel objected, and the objections were sustained. Testimony was also excluded as to alleged statements by *Northrup*, that he had never directed witness to build the house, and had never talked with him upon the subject.

*R. C. Owens*, one of the plaintiffs, testified that he had agreed with Wilson for the building of the house; that Wilson came to plaintiffs with the plan, and stated that *Northrup* was going to build a house for him. Defendant's counsel then objected to any detailed statement of any contract between plaintiffs and Wilson, upon the alleged representation of Wilson that he was acting for *Northrup*, but the objection was overruled.

Defendant, *Northrup*, being sworn as a witness on his own behalf, testified that he had never given Wilson any such authority as he had testified to. Defendant further testified as follows:

" At the time Wilson says I authorized him to employ men to build house, I says, I will go on and build you a house, with the idea that I must wait for my pay, and go on and build the house; I went on further; I told him, you can trade a couple of lots, you can trade one to the carpenter and one to the mason; I said, you can use it; I will hold a mortgage on your property, on the house and on the lot, until you can pay it, as security; he was a great deal involved; I wanted to help him; I told him I had built a house very cheap, and I would send him a plan of the house I had built on a farm I had; I thought that should not involve him so much but he could pay for it, and I sent him up a plan; that conversation amounted to nothing; I know nothing about his building a house or commencing it; I think there was

nothing further said at that time.   *   *   *   I gave no other authority beyond what I have stated; never gave him any authority to make any contracts; I never gave him, Wilson, any authority to build a house for me at Winneconne, as my agent; I recollect a conversation between myself and Wilson at the grocery store of Lymans, in Winneconne, in the back part of the grocery, at which Fisher was present." Testimony as to the details of this conversation, being objected to, was excluded. Defendant further testified as follows: "I sent Wilson some money; I sent him at Winneconne $25, and I paid at another time, $100; Nov. 12th he came down to Ripon, and had got his house on his hands and wanted some means to pay for it; Nov. 12th there was an arrangement that I should send him some money, mailed at Ripon, to pay his help; this was the first arrangement he made with me about any means to build this house." From all of the rulings of the court excluding evidence offered by defendant, and sustaining objections to questions put by his counsel, defendant appealed.

*Gillet & Taylor* for appellant.

*Felker & Weisbrod, contra.*

DIXON, C. J.   This case comes up solely upon exceptions to evidence, or rather to the rulings of the court in excluding certain evidence offered by the defendant on the trial, and in sustaining objections to sundry questions put by him to the witnesses.   The action is to enforce a mechanics lien, and the main point or gist of controversy, seems to be as to the personal liability of the defendant for the demands of the plaintiffs.   The work was done, and some materials furnished by the plaintiffs, under a contract entered into by them, with one Wilson, who claimed to act as the agent of the defendant in the building of a house.   The agency of Wilson is in dispute. The defendant denies that he was his agent, or had any authority to contract for him or in his name, and that became the point of support at the trial, upon which the personal liability

Owens and another vs. Northrup.

of the defendant rested. The authority of Wilson, if he had it, existed merely in parol. No writing was ever made or given, and nothing but a verbal agency was claimed. The plaintiffs resided at Oshkosh, Wilson at the village of Winneconne, where the house was built, and the defendant at Ripon, which places are distant from each other, respectively, from twelve to twenty miles. It does not appear that the plaintiffs and defendant ever saw each other, or that any conversation or correspondence ever took place between them, before or during the time of the building of the house. It appears that the defendant was the owner of a foundry at Winneconne, which Wilson and one Brockway had contracted to purchase, and which they were engaged in operating under the contract, in a way that a certain portion of each day's earnings was to be applied as payment on the contract. It appears also, that Wilson's dwelling house was not situated near or convenient to his business, and that he wanted another which was more so. To obtain this, it became necessary to build, and Wilson being in straightened circumstances, applied to the defendant for assistance, which the defendant promised. The defendant furnished Wilson with the plan of a house, such as he himself had built, together with an estimate of the quantity of lumber required, and the probable cost. It likewise appears that the house was built upon a lot in Winneconne, not owned by the defendant, but the title of which was in one Bovay. It does not appear that the defendant was ever at the house during the progress of the work, or manifested any particular interest in, or gave any directions respecting it, although he was at Winneconne several times during or about that period. It was furthermore in evidence, by the testimony of both Wilson and the defendant, that the defendant advanced Wilson $125 toward paying for the house. Wilson bought the materials, made the contract, supervised and directed the construction, and transacted all the business with respect to the building. Thus far there is no essential disagreement between Wilson and the defendant. The other testimony

requisite to a proper understanding of the case, and given by the parties and their witnesses, appears from the report.

The sole, or almost the sole, reliance of the plaintiff to establish the agency was the testimony of Wilson. He testified to it positively. The defendant, when he came upon the stand, as positively denied it. On the cross-examination of Wilson, counsel for the defendant asked him this question: "Were you and Brockway running the foundry for yourselves, or did you have the avails of it to apply in the purchase of the foundry?" The testimony was excluded by the court and the defendant by his counsel excepted.

Wilson had testified that the defendant "built the house with the design for me to have it some time when I got ready to pay for it — it was for my accommodation;" whereupon the defendant's counsel asked this question: "Was the price of the lot agreed upon?" The question was objected to by the plaintiffs, and excluded by the court, and the defendant excepted.

The witness was interrogated respecting a conversation which defendant claimed took place between himself and witness, the last of August or first of September before the house was built and contract made with plaintiffs, in the back part of Lyman's grocery in Winneconne, and was asked: "Did you have a conversation then, in which was talked over between you and *Northrup*, in which he was to sell you the lot on which you were to build and you were to mortgage it back for the purchase money after you built the house?" This question was objected to by plaintiff, objection sustained and exception taken by defendant. And the court thereupon struck out some of the testimony of the witness, in which he stated that "it was designed for me to have the house some time or other, if I paid for it; he (defendant) built it for that purpose; I could not say the exact date I commenced payment."

The witness then stated that he recollected being at Ripon some time in October, that he was in Olmsted & Miner's store at that time, and saw the defendant there, whereupon the fol-

lowing questions were put to him: "Did you, at that time, state in the conversation with *Northrup* and Olmsted, in the store, that you had got tired of paying rent, and was in a hurry to get into your own house?" "Did you state, at that time and place, to Mr. Olmsted, that you were going to eat your Christmas dinner in your own house, referring to this house?" "Was there any agreement of what you were to pay *Northrup* for this house and lot?" "What was the agreement between you and *Northrup* concerning the purchase of the lot by you?" "Was there any agreement between you and *Northrup* as to the amount you were to expend on this house?" And again the witness was asked, referring to the contract made with the plaintiffs and the money due them: "Did you ever request *Northrup*, or make any attempt to get the money of him, to pay them?" All these questions were in like manner objected to by counsel for the plaintiffs, and excluded by the court, under exception on the part of the defendant.

Some other questions were likewise put to the same witness, and excluded, the propriety and relevancy of which do not clearly appear. They related to an alleged conversation between the defendant and the witness, in which the defendant denied that he had ever directed the witness to build the house, or had any contract with him about it. This testimony was clearly inadmissible, unless the proposition was to show that the witness expressly or tacitly assented to the correctness of the statements made by the defendant, which does not appear.

And on the examination of the defendant as a witness, the following questions were ruled out at the instance of the plaintiffs: "Was this house that was built such a house as that plan called for—was it according to the plan?" The defendant testified that he recollected a conversation between himself and Wilson, at the grocery store of Lyman in Winneconne, in the back part of the grocery, at which Fisher was present, and was asked to state what that conversation was. The plaintiff objected and the court refused to allow him to do so. The defend-

ant was then asked : " Was it talked with Wilson the last of
Auggust or first of September, in the back part of Lyman's gro-
cery at Winneconne, that Fisher wanted to build a house, and
that Wilson and Fisher would go down to Buttes des Mortes to-
gether and buy lumber for their two houses, Fisher paying a part
in money and Wilson making arrangements to pay the balance
out of his foundry ?" This question was likewise objected to
by the plaintiffs, and ruled out under exception taken on the
part of the defendant.

It is obvious to our minds, that the court was in error in the
several rulings to which attention has been called, and that the
origin or ground of such error on the part of the learned judge,
consisted in its having improperly *assumed* for the purpose of
the evidence offered, that Wilson was in fact the agent of the
defendant, authorized by the latter to build the house for him
and in his name. Such is the error as it seems to us, into which
the learned counsel for the plaintiffs have fallen in their argu-
ment in this court.

Assuming that Wilson was in fact the agent, with authority
to do just what he did in the name of the defendant, then it is
very clear, as counsel argue, that it was wholly immaterial what
the relations between Wilson and the defendant were, with re-
spect to the foundry or the running of it, or what agreement had
been entered into between them as to the house after it should
be built, or as to the title of the lot, or whether the house was
built according to the plan furnished or suggested by the de-
fendant, or finally what conversations had taken place between
them, or what statements or admissions Wilson might have
made inconsistent with or in disproof or denial of the fact that
he was agent. All these positions are very correct, assuming
the agency, but without such assumption, or supposing that
Wilson may not in truth have been agent, which was the very
fact in issue and to be found by the jury, it is manifest that
they are entirely incorrect. It is with reference to the disputed
fact of agency, as bearing upon that and tending to show that

Owens and another vs. Northrup.

Wilson was not or may not have been acting as agent, that we think the questions put and testimony offered were admissible. For this purpose we think the contract relations between Wilson and the defendant, respecting the foundry, their agreement, if any, as to the house and lot, the bargain for or proposed purchase by Wilson of the lot, if that was so, and the price, and in fine, all the business transactions and relations then presently existing between the defendant and Wilson, at Winneconne, and which were connected with and led to the building of the house, were admissible and ought to have been received in evidence before the jury. With all these facts fully exhibited before the court and jury, it might have appeared after all that Wilson was not acting in the representative capacity which he claimed, and that he was not the agent, as he testified. The question of agency in such a case is a mixed one of law and fact. Wilson's statement, that he was acting as agent, did not conclusively demonstrate or prove that he was so, or that he had authority personally to bind the defendant. The defendant was entitled to have all the facts before the court and jury, in order that it might be seen whether Wilson was agent, or what the conclusion of the law would be upon the subject.

Evidence that the defendant furnished a plan for the house, was received as tending to establish or confirm the alleged agency. On the other hand, evidence that Wilson rejected or did not follow the plan, was equally admissible and potent for the opposite purpose.

And evidence, if the facts were so, that Wilson had made statements and admissions out of court, inconsistent with those sworn to by him as a witness in it, respecting his agency, or how or for whom he was building the house, was clearly admissible for a well recognized purpose, and upon a very familiar principle. A person claimed to have been the agent and authorized to bind another as his principal, called upon the stand as a witness to prove such agency, by his own testimony, may be impeached or discredited with respect to the fact so

testified by him, the same as any other witness, or the same as if he were testifying to any other fact. It may be shown of him, as of any other witness, that he has made different and conflicting statements elsewhere, as that he was not acting as agent, or authorized so to act, and these statements may be introduced for the purpose of contradicting or discrediting him. This is a very common method of impeaching the credibility of witnesses, and several of the questions asked should have been answered on this ground.

*By the Court.* — The judgment of the court below is reversed and a *venire de novo* awarded.